UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SPARKY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:17-cv-1135-GCS |
| VENERIO SANTOS, | ) | |
| JESSICA KNEBEL, | ) | |
| SUSAN WALKER, and | ) | |
| ANN LAHR, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court are motions for summary judgment filed by Defendants Knebel and Santos (Doc. 49, 50, 64) and Defendants Lahr and Walker (Doc. 57, 58).[1] Jackson *only* filed an opposition to the summary judgment motion filed by Knebel and Santos. (Doc. 56). Based on the reasons delineated below, the Court **GRANTS** the motions for summary judgment.

On October 23, 2017, Jackson filed a complaint pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was housed at Centralia

---

[1] Pursuant to Federal Rule of Civil Procedure 56, *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992) and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), Defendants filed the required notices informing Jackson of the consequences of failing to respond to the motions for summary judgment. (Doc. 51, 59).

Correctional Center ("Centralia"). (Doc. 1). Specifically, Jackson alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. On November 27, 2017, the Court conducted its preliminary review of Jackson's complaint pursuant to 28 U.S.C. § 1915A. The Court allowed Jackson to proceed on one count of deliberate indifference to serious medical needs in violation of the Eighth Amendment against Santos, Knebel, Lahr, and Walker regarding his symptoms of rectal pain, abdominal pain, constipation, bad breath, and dry mouth in violation of the Eighth Amendment. (Doc. 7).

## FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Jackson, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

The events surrounding this lawsuit occurred at Centralia. Jackson is an inmate within the Illinois Department of Corrections ("IDOC") and currently housed at Dixon Correctional Center ("Dixon"). Defendant Santos is a physician at Centralia. Defendant Knebel is a nurse at Centralia. Defendant Walker is a grievance officer, not a physician. Defendant Lahr is a member of the Administrative Review Board ("ARB"), not a physician.

Jackson was transferred to Centralia sometime in April 2016. On August 9, 2016,

---

[2] These facts are not in dispute unless noted.

Jackson first reported to the healthcare unit for hemorrhoids. Jackson complained of rectal burning and protrusion from the rectum. There were no complaints of bleeding or itching. The nurse observed slight protrusion but there were no signs of trauma. The nurse referred Jackson to the physician.

Jackson was first seen by Santos on August 12, 2016. At this visit, Santos performed a rectal exam on Jackson. He diagnosed Jackson with internal hemorrhoids, ordered Jackson to keep the area clean, and prescribed anti-hemorrhoid cream.

On August 21, 2016, Jackson sent a request to healthcare stating that he saw Santos on August 12, 2016 and that his condition had gotten worse. Jackson returned to the healthcare unit on August 23, 2016. He complained of blood in his stool the night before and complained of burning. The nurse noted the inspection of the anal area was within normal limits, and there were no signs of bleeding or trauma around the anal area. The nurse referred Jackson to a physician. Jackson contends that he told the nurse that the hemorrhoids were causing severe pain, swelling and burning with a little speck of blood on the tissue.

On August 25, 2016, Santos examined Jackson for the second time for complaints of rectal pain and burning. The medical records reveal and Santos's affidavit state that Jackson denied any constipation and refused the rectal examination. Santos continued Jackson on the anti-inflammatory cream. Jackson counters that he was not physically examined by Santos at this visit, that he told Santos the cream was not working and that it made his situation worse and that Santos refused to treat his condition. Jackson further

counters that he told Santos that he was reluctant to use the bathroom and that Santos did not mention a rectal examination.

On September 9, 2016, Jackson returned to the healthcare unit complaining of blood in his stool. The nurse examined Jackson and found no signs of hemorrhoids, redness, or swelling present. Jackson was admitted to the infirmary for a 23 hour period to monitor his condition. Jackson contends that he went to the bathroom reluctantly. He had pain, burning, and swelling and saw a lot of blood in the stool and on the tissue after wiping. Jackson contends that the nurse told him she was going to need three stool samples, and in response, Jackson told her that he really did not want to use the toilet due to all the pain, burning and swelling. Jackson gave the nurse three stool samples and contends that the nurse noted blood, hemorrhoid and a mucus like substance.

Jackson was discharged from the infirmary on September 10, 2016. Jackson was educated on the need to increase his fluids and fiber intake. Jackson was placed on the schedule to see a physician.

On September 12, 2016, Santos examined Jackson for complaints of blood in his stool. At that time, Jackson complained of burning defecation. Santos performed a rectal examination and ordered a hemoccult test, which was negative. Santos diagnosed Jackson with internal hemorrhoids and continued him on hemorrhoid cream. Jackson contends that the problem with Santos is that he never changed his method of treatment.

According to the medical records, Jackson did not return to the healthcare unit regarding any complaints of rectal pain or burning until December 2016. Jackson

contends that he wrote Lisa Krebs on October 31, 2016, indicating there was no reason for him to see Santos because every time he went to see Santos, Santos did nothing and he did not prescribe different treatment.

On December 5, 2016, Jackson put in a request slip to healthcare for complaints of swelling, pain, and burning to his rectum while using the toilet. Jackson contends that he asked not to see Santos and he signed a refusal slip for Santos. On December 10, 2016, Jackson sent another request slip to healthcare, described his symptoms and asked to be examined by any doctor other than Santos.

On December 12, 2016, Jackson returned to the healthcare unit. Jackson complained of blood in his stool and pain in his rectal area. The nurse noted that the hemorrhoids were visualized, but that there was no sign of blood or trauma. The nurse referred Jackson to the doctor. Jackson contends he told the nurse that he did not want to see Santos because he keeps prescribing the same cream that he thought was causing the pain.

On December 14, 2016, Dr. Garcia examined Jackson. He diagnosed Jackson with an anal tear and prescribed antibiotics TAO and Keflex. Dr. Garcia also counseled Jackson on the need to ensure his rectal area remained clean. Jackson contends that Dr. Garcia told him to stop using the hemorrhoid cream.

On January 17, 2017, Santos saw Jackson for complaints of abdominal pain, burning in the rectal area and a foul order coming from his mouth. According to the medical records, Santos completed a rectal examination. Santos did not find any signs of

tearing and diagnosed Jackson with rectal pain and irregular bowel movements. Further, Santos ordered an x-ray of Jackson's abdomen, prescribed fiberlax stool softener, and educated Jackson on anal hygiene. Santos did not find any significant issues with Jackson's breath. Jackson contends that at this visit Santos gave him a colon cancer physical. Jackson disagrees with Santos's opinion about his breath.

On January 18, 2017, Dr. Garcia examined Jackson for complaints of foul order from his mouth and burning to his rectum. Dr. Garcia diagnosed Jackson with possible GERD and hemorrhoids.[3] Dr. Garcia prescribed Jackson Pepcid, continued him on fiberlax and educated him on proper anal hygiene.

On March 11, 2017, Jackson saw a dentist/oral hygienist about the foul order coming from his mouth. The dentist/oral hygienist indicated that everything looked fine and asked Jackson if he saw a doctor, and he told her yes.

Jackson did not return to the healthcare unit until July 20, 2017. At this time, Jackson complained of abdominal pain.

On July 21, 2017, Santos examined Jackson regarding the abdominal pain, noted the abdomen was soft and his bowel sounds were normal. A urinalysis was performed, and the results came back negative. Santos diagnosed Jackson with urethritis and told Jackson to increase his fluid intake.

On August 5, 2017, Jackson maintains that he sent a request slip to Knebel about

---

[3] Jackson agrees that Dr. Garcia diagnosed him with GERD; he is not sure about the hemorrhoids.

all of his health issues and asked for a face-to-face meeting with her to discuss.

On August 9, 2017, Jackson saw a nurse at the healthcare unit and complained about pain in his stomach, foul odor coming from his mouth and hemorrhoids. Jackson also told her that he did not want to see Santos.

On August 11, 2017, Santos saw Jackson for complaints of upper adnominal pain. Santos ordered a second KUB x-ray of Jackson's abdomen and a follow-up to discuss the results. Jackson contends that he asked Santos why he had not seen a specialist after all his complaints and that Santos said it was not necessary.

The results of the KUB produced a finding of mild increased gas in the stool and in the colon. There was also no obstruction of free air, no mass and organomegaly, nor were there any abdominal calcifications noted.

On August 19, 2017, Jackson was seen by Dr. Butalid, who discussed the KUB results. Dr. Butalid examined Jackson and ordered Pepcid 20 mg twice a day and a follow-up in three weeks. Dr. Butalid noted that if Jackson's symptoms did not improve, an ultrasound might be needed.

On September 14, 2017, Santos saw Jackson for his abdominal pain. Jackson indicated that he was not experiencing any relief from his abdominal pain. Santos examined Jackson, assessed that gallbladder disease needed to be ruled out and submitted a referral to collegial review for approval of the ultrasound. Santos also ordered Jackson not to eat any spicy foods.

During collegial review on September 18, 2017, the Director of Utilization

Management, Dr. Ritz, ordered an alternate treatment plan to obtain a CBC and metabolic profile, to consider adding a stool softener, and to implement diet modifications based on a review of Jackson's commissary records. Dr. Ritz noted that if Jackson's symptoms persisted after 6 to 8 weeks to resubmit for the ultrasound. The alternative treatment plan was implemented on September 25, 2017.

Eight weeks after the expiration of the alternative treatment plan, Jackson was still experiencing symptoms of abdominal pain. Thus, on December 18, 2017, Santos appealed the collegial decision from September 18, 2017 and requested that Jackson be sent for an ultrasound. Dr. Ritz approved the ultrasound.

On December 21, 2017, Santos saw Jackson for a follow-up on his blood results. Santos informed Jackson that the results were negative for H. Pylori. Jackson did not have any complaints at this time. The ultrasound was performed on Jackson's right upper quadrant. The results of the ultrasound were negative for gallbladder disease.

On January 4, 2018, Santos saw Jackson regarding his ultrasound and CBC results. Jackson indicated he had no complaints at that time. Santos informed Jackson that his test results were negative for gallbladder disease and that his CBC was normal. Jackson made no further complaints to Santos regarding abdominal pain in 2018. However, on February 7, 2018, Jackson spoke with Dr. Garcia about his CBC and abdominal pain.

Jackson has never spoken to Knebel in person regarding any of the concerns contained in his complaint. He only communicated to Knebel through a letter. Jackson

admitted that if Knebel never received the letter, he would not have any allegations against her. Jackson also testified that he does not understand why she would not have received the letter.

With respect to the other Defendants, Grievance #17-8-59 is the only contact Jackson had with Defendant Walker concerning his medical treatment. Grievance #17-8-59 is the only grievance Defendant Lahr received from Jackson concerning his medical needs.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving

party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-592. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)(citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v.*

*McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted) (emphasis added)).

To show prison officials acted with deliberate indifference, a plaintiff must put forth evidence that prison officials not only knew that the prisoner's medical condition posed a serious health risk, but they consciously disregarded that risk. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id. Accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(stating that "[d]eliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)(stating that "negligence, even gross negligence does not violate the Constitution.").

Assessing the subjective prong is more difficult in cases alleging inadequate health care as opposed to lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit explained:

> By definition a treatment decision that is based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)).

This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[] that [he] did." *Whiting*, 839 F.3d at 662 (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)(alterations in the original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441. The Eighth Amendment does not require that prisoners receive "'unqualified access to health care.' Rather, they are entitled only to "'adequate medical care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)(citations omitted).

Defendants moved for summary judgment arguing that they were not deliberately indifferent to Jackson's serious medical needs. Jackson opposes the motions. As the motions are ripe, the Court turns to address the merits of the motions.

## ANALYSIS

I.   **Medical Provider Defendants**

   A.   **Serious Medical Need**

First, Knebel and Santos argues that Jackson's complaints of dry mouth and bad breath do not constitute a serious medical condition. Specifically, Defendants argue that there is not a single medical record that demonstrates any medical physician deemed Jackson's complaints for dry mouth or bad breath as requiring medical treatment. The record does not establish that Jackson's subjective complaints about bad breath and dry mouth ever became a serious medical issue. There is also no medical evidence that his

complaints of bad breath and dry mouth constituted an objectively serious condition that mandated treatment. *See, e.g., Guitierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)(noting that not every ache, pain, or discomfort can support an Eighth Amendment claim.). Jackson first complained about his bad breath while housed at Big Muddy Correctional Center before he was transferred to Centralia. He saw a dentist who found that his oral hygiene was very good and was informed that he should consult with a physician if he thought there was a problem. Although the Court acknowledges that bad breath and dry mouth is unpleasant, there is nothing to indicate that Jackson had a serious medical condition and that Defendants failed to properly treat that condition. Thus, Defendants Knebel and Santos are entitled to summary judgment regarding Jackson's bad breath and dry mouth claims. Out of an abundance of caution, however, the Court will also address these conditions under the deliberate indifference standard.

### B. Deliberate Indifference

Construing the evidence in the light most favorable to Jackson, the Court finds that he has not established that either Santos or Knebel was deliberately indifferent to his medical needs regarding his hemorrhoids, abdominal pain, bad breath, dry mouth and constipation. The record reveals that from August 2016 to January 2018 Santos provided appropriate medical treatment to Jackson. Santos regularly saw Jackson, and Jackson admitted that Dr. Santos prescribed him hemorrhoid cream, fiberlax, ordered a hemoccult test, and educated him on anal hygiene. Additionally, Santos referred Jackson's abdominal pain complaints to collegial review for an ultrasound to rule out

gallbladder disease. Santos also appealed the collegial review's decision to provide alternate treatment after that treatment did not work so that Jackson could get an ultrasound. Obviously, the treatment was not the treatment Jackson wanted or demanded. However, mere disagreement or dissatisfaction as to the treatment received does not amount to deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). There is no evidence that Santos's treatment of Jackson's hemorrhoids was such a substantial departure from accepted professional judgment, or so plainly inappropriate, as to permit the inference that he intentionally or recklessly disregarded Jackson's serious medical needs. Rather, Santos exercised his professional judgment and recommended a more conservative course of treatment for the symptoms associated with Jackson's hemorrhoids, constipation, abdominal pain, bad breath and dry mouth.

Likewise, there is no evidence that Knebel was deliberately indifferent to Jackson's serious medical needs. For example, Jackson has not established that Knebel was aware of his complaints. Jackson admitted that he did not have a face-to-face conversation with Knebel. He also admitted that his only interaction with Knebel was a letter he wrote to her, and Jackson is unaware if Knebel ever received that letter. Thus, there is no evidence that Knebel was deliberately indifferent to his serious medical needs. Thus, Santos and Knebel are entitled to summary judgment.

## II.  Defendants Ann Lahr and Susan Walker

Prison officials, who are non-medical professionals, are entitled to rely upon the judgment of medical professionals to avoid liability under the Eighth Amendment. *See Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008). For example, the Seventh Circuit found that "as a layperson, the warden could rely on the medical staff's expertise as long as he did not ignore [an inmate] or his mistreatment." *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

Lahr and Walker contend they cannot be liable because they reasonably relied on the judgment of medical professionals. They also argue there is no evidence that Jackson's grievances were ignored or mishandled, and they were not personally involved in Jackson's medical treatment. Based on the record, the undersigned finds that Jackson has not established that either Lahr or Walker was deliberately indifferent to Jackson's serious medical needs. Both Defendants were part of the grievance process and not medical providers or professionals. Jackson was seen regularly in the healthcare unit.

The record reflects that Walker, a grievance officer, responded to only one grievance regarding Jackson's medical treatment, grievance #17-8-59. In response, Walker responded as follows: "[i]t is this writer's findings that the offender's medical records, the medical records are being addressed by the facility's health care staff: therefore, I recommend grievance denied. Only qualified Medical staff determine medical care." (Doc. 58-2, p. 1). Similarly, Lahr, a member of the ARB, denied grievance #17-8-59 finding it was appropriately addressed by the facility Administration, and

finding, "[p]er HCU, offender is receiving treatment for this issue." (Doc. 58-2, p. 1).

The Eighth Amendment does not require that prisoners receive "unqualified access to health care[.]" Rather, they are entitled only to "adequate medical care." *Johnson*, 433 F.3d at 1013. The record reflects that Walker investigated the medical issues Jackson complained of in grievance #17-8-59, and Walker provided Jackson with a response. Likewise, the record reflects that Lahr, in the last step of the grievance process, denied Jackson's grievance. Walker and Lahr were entitled to rely on the advice and treatment rendered by the medical professionals. Prison grievance procedures are not mandated by the Constitution, and alleged mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Similarly, prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance, which precludes liability under Section 1983. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Accordingly, no reasonable jury could find that there is evidence that either Walker or Lahr was deliberately indifferent to Jackson's serious medical needs. Nor could any reasonable jury find that either Walker or Lahr ignored Jackson's medical concerns by simply reviewing and denying one grievance.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment filed by Santos and Knebel (Doc. 49) and the motion for summary judgment filed by Lahr and Walker (Doc. 57). The Court finds in favor of Venerio Santos, Jessica Knebel, Susan

Walker, and Ann Lahr against Sparky Jackson. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case. Jackson shall take nothing from this case.

**IT IS SO ORDERED.**

**Dated: June 30, 2020.**

Digitally signed by Judge Sison
Date: 2020.06.30 16:11:55 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**